IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-2734-RBJ

NELSON VETANZE, doing business as OMNI CHIROPRACTIC,

Plaintiff,

v.

NFL PLAYER INSURANCE PLAN,

Defendant.

## ORDER

This is an appeal from the denial of benefits under an ERISA plan. The case has featured an unusual degree of quarreling about the administrative record and the standard of review. Ultimately, however, it was briefed on the merits and became ripe for review by this Court on March 22, 2013. The matter thereafter tumbled through the cracks, and for that the Court extends its apology to the parties and counsel. For the reasons set forth in this order, the denial of benefits is reversed, and the case is remanded for further proceedings consistent with this order.

**FACTUAL BACKGROUND**

The NFL Player Insurance Plan provides medical benefits for eligible NFL players and their dependents. NFL 1.[1] It is self-funded by contributions from each NFL club on a per-capita basis to the NFL Players Insurance Trust. NFL 163, 165-66, 218, 221. The Plan does not cover

---

[1] The administrative record, which dwas submitted in hard copy rather than electronically, is paginated either "NFL [page number]" or "Ayers [page number]."

"charges for an injury resulting from your employment or occupation" or for "an illness that is covered by Workers' Compensation or similar law." NFL 189, 244.

The Plan grants the Trustees "full discretionary authority to interpret the Plan and to resolve all questions that arise under the Plan, including questions of fact." NFL 211, 266. The Plan also designated CIGNA as a third-party administrator to administer the determination and payment of claims for medical benefits. Specifically, the Trustees "have delegated the discretionary authority to apply the terms of the Plan and to make factual determinations to . . . CIGNA in connection with all claims for Self Funded Benefits." *Id.* CIGNA has no financial responsibility for the payment of benefits. *Id.*

During a meeting of the Trustees on June 3, 2010 a representative of the NFL Management Council expressed a concern that the Plan appeared to be paying numerous claims for chiropractic services that were work-related and therefore not covered by the Plan. NFL 274. She suggested that the Trustees adopt a presumption that chiropractic services received by an active player in training camp or on or near a game date are work-related. NFL 275. Under this proposal, which the Trustees unanimously adopted, "a player who submitted a claim for chiropractic services provided within these periods would need to establish to CIGNA's satisfaction that the services were provided for a sickness or injury that is not work-related in order for the Plan to pay it." *Id.*

In a memo from the NFL Management Council dated July 10, 2010 the NFL Clubs were informed that the Plan was changing its coverage for chiropractic claims filed "during the 2010 playing season." NFL 61. The memo stated, among other things, that "the Plan will not pay claims filed for chiropractic services performed during each Club's Training Camp.," and that the changes would be reflected in the Plan and its Summary Plan Description. *Id.* The memo

2

added that, although the Summary Plan Description would be provided upon publication, the memo was being sent to provide advance notice since the changes "will be in effect soon." *Id.*

By letter dated August 2, 2010 the Plan informed CIGNA that "[n]o chiropractic claims should be paid for chiropractic services performed during each Club's Training Camp, which is the period from the opening of camp through the Club's final pre-season game." NFL 62. The letter attached a list of the 2010 training camp dates for each club, none of which had yet begun. NFL 63.

The Denver Broncos' camp opened on July 28, 2010 and closed with the team's final pre-season game on September 2, 2010. NFL 63. During the Broncos' 2010 training camp 21 players received chiropractic treatments from Dr. Vetanze. Dr. Vetanze in turn submitted claims to CIGNA on pre-printed claim forms. *See, e.g.,* Ayers 1.[2] In the Ayers example the form indicates that the treatment was provided on July 30, 2010; the diagnosis is indicated by code numbers, 739 1, 739 2, 739 3 and 739 6; a check in a box indicates that the injuries were not related to Mr. Ayers' employment; and it is not indicated that he missed work. *Id.* It appears that Dr. Vetanze might be indicating that he provided treatment for the same or similar injuries on October 17, 2009, but if so, the date is placed in the wrong box. Id.

Exhibit 1 to Dr. Vetanze's Opening Brief provides information apparently obtained by counsel from the Internet that indicates that the four code numbers on the Ayers claim are for nonallopathic lesions of the cervical region, thoracic region, lumbar region and lower extremities. [#53-1 at 2]. The same codes in addition to codes for treatment of nonallopathic lesions of the pelvic region and upper extremities, headaches, unspecified fractures, foot dislocations and sprains of the cruciate ligament of the knee appear to cover most or all of the treatments rendered to players during the 2010 training camp. The record also contains

---

[2] The claim submitted on behalf of player Robert Ayers is representative of all the claims.

3

treatment notes. *E.g.,* Ayers 5-6. These notes mean little to me, but possibly to a professional in the field they might add something of significance to the question whether the treatments were work-related. According to the Plan's Response Brief [#56], CIGNA denied each claim "because the chiropractic treatment had occurred during the 2010 training camp." *Id.* at 10.

Dr. Vetanze notified CIGNA of his appeal from its denial of the Ayers claim in what appears to be a form letter crafted for that purpose. The letter lists the four diagnosis codes, adding in handwriting "segmental dysfunction," and then states,

> The condition is NOT work related and was NOT the result of an on-the-job injury. No work-related injury has been reported and no workers compensation claims have been filed.
>
> I appeal your previous decision, requesting you reconsider and pay this claim in accordance with Mr. [Ayers written in] s' coverage with Cigna Insurance as this patient is an exception to the NFL mandate to NOT pay chiropractors for treatment rendered to active NFL players.

Ayers 11.

The appeal was denied on May 27, 2011. The basis for denial was provided by CIGNA's Appeal Processor as follows:

> The decision was based on the NFL Players Insurance Plan Summary Plan Description which excludes from coverage any services provided for an injury or sickness that is work-related. Chiropractic services provided to an active Player in training camp or on or near a game day are presumed to be work-related, absent a showing they are not. The claim submitted by Nelson Vetanze, BS, was documentation on file showing otherwise.

*Id.*

Accordingly, the denial of the appeal cited the presumption. It also cited the Summary Plan Description. By that date the new Summary Plan Description, dated September 2010, was in effect. It contains the following description of Chiropractic Benefits:

> The Plan covers up to thirty-five chiropractic treatments per Plan Year without requiring that you establish they are Medically Necessary. The Plan does not cover any services provided for an injury or sickness that is work-related.

4

> *Chiropractic services provided to an active Player in training camp or on or near a game are presumed to be work-related, absent a showing they are not.*

NFL 241 (emphasis added).

The Appeal Processor's letter of May 27, 2011 also indicated that a second appeal could be filed, and that if filed, the second appeal with any additional supporting documentation would be reviewed by an individual not involved with the previous review. Ayers 35. Dr. Vetanze did not file a second appeal but, instead, filed the pending lawsuit.

### ANALYSIS AND CONCLUSIONS

#### Standard of Review

Review is limited to the administrative record. The parties now agree that CIGNA has been granted discretionary authority with respect to the payment of claims for medical benefits under the Plan, and therefore, that this Court must apply an abuse of discretion or "arbitrary and capricious" standard.[3] Dr. Vetanze argues, however, that there is an inherent conflict of interest that the Court should take into account in determining whether an abuse of discretion occurred here. I at least agree that there are certain factors unique to this case that the Court must consider in applying the abuse of discretion standard.

CIGNA had no financial interest in the granting or denying of a claim. The Plan argues that it too had no financial interest in the granting or denying of claims, because the NFL clubs fund the Plan based upon a fixed percentage of the Clubs' revenue; all funds are devoted to the benefit of the players; and any savings resulting from the denial of a claim goes to the players, not the clubs. Response Brief at 14-15. Those facts are undisputed. However, the fact that the Trustees (three of whom were employees of NFL clubs) were concerned about claims being improperly paid indicates that they had a form of financial interest. The facts here also raise a

---

[3] Dr. Vetanze concedes this in his Reply Brief [#58] at 2.

question as to whether CIGNA in fact did exercise discretion when it denied the subject claims, instead giving undue if not dispositive weight to a direction from the Plan to deny the claims. The Court has taken those case-specific facts into account. *See Metropolitan Life Ins. Co. v. Glenn,* 534 U.S. 105, 116-17 (2008); *Holcomb v. Unum Life Ins. Co. of America,* 578 F.3d 1187, 1192 (10th Cir. 2009).

### **Merits**

Dr. Vetanze's complaint boils down to two simple arguments: first, that the new presumption should not have taken effect until the Plan was formally amended; and second, that in any event, because the denial of the claims did not credit Dr. Vetanze's indication that the treatments were not work-related, it was arbitrary and capricious.

Effective Date

The Plan vests broad authority in the Trustees with respect to its terms and its implementation. Specifically,

> The Trustees . . . will be responsible for implementing and administering the Plan, subject to the terms of the Plan and Trust. The Trustees will have full and absolute discretion, authority and power to interpret, control, implement, and manage the Plan and the Trust. Such authority includes, but is not limited to, the power to:
>
> (a) Define the terms of the Plan and Trust, construe the Plan and Trust, and reconcile any inconsistencies therein;
>
> (b) Resolve a claim for self-insured benefits after the Administrator has made its final decision under Section 9.2. In the event a Participant elects to utilize this voluntary appeals process, the Trustees shall have the absolute discretion to interpret the Plan and to resolve all questions. Their decision shall be final and binding, subject only to a timely-filed request for review by a federal court;
>
> . . .
>
> (d) Adopt procedures, rules, and forms for the administration of the Plan;
>
> (e) Delegate its power and duties to other persons and appoint and assign authority to other persons . . . .

NFL 34, 144.

Dr. Vetanze concedes that this authority is broad enough to adopt the presumption regarding the treatment of claims for chiropractic services during the teams' training camps. He questions whether the presumption could be implemented before a formal change in the actual Plan document was made, citing among other cases *Miller v. Coastal Corp.,* 978 F.2d 622, 624 (10th Cir. 1992) (an employee benefit plan cannot be modified by informal oral or written communications). Here, however, the presumption does not alter the Plan's plain provision that work-related injuries are not covered. The presumption provided additional general direction to the third-party administrator in the implementation of the Plan, apparently in response to reports of the submission and payment of uncovered claims. Coverage for injuries that are not work-related was not affected. It does not follow from the fact that the presumption was later written into the Summary Plan Description that this was the type of informal modification of a Plan that *Miller* forbids. The Court concludes that the Trustees had the authority to adopt the presumption and to apply it to the 2010 training camps without awaiting its formal incorporation into the Plan documents.

Application of the Presumption

My problem with CIGNA's denial of the claims is twofold. First, although the Trustees enacted a rebuttable presumption that claims occurring during training camp are work-related, that is not the way the decision was communicated to the NFL clubs or to CIGNA. Rather, both the NFL Management Council's memo to the teams of July 10, 2010 informing them of the new policy and the Plan's letter to CIGNA of August 2, 2010 state that the Plan will not pay claims filed for chiropractic services performed during training camp. That is not a rebuttable presumption. That is a plain directive that such claims will not be paid, thereby seemingly divesting CIGNA of discretion to do anything but deny claims. While it is not clear in the

administrative record that CIGNA's initial denial of the claims was based on that directive, I note again that the Plan seems to admit in its brief before this Court that "CIGNA denied these claims, because the chiropractic treatment had occurred during the 2010 training camp." Response Brief [#56] at 10.

I have noted that in denying the Ayers appeal, CIGNA's Appeal Processor listed as the basis for his decision the presumption that chiropractic services rendered during training camp were work-related. However, he was reviewing an initial decision that, for all that the record shows, was based on the incorrect standard.

Second, and more importantly, although the Appeal Processor appears to have applied the rebuttable presumption, he stated that "no documentation" was on file showing that the services were not work related. NFL 35. That is plainly erroneous. Dr. Vetanze had checked the claim forms to indicate that the services that are the subject of the subject claims were not work-related, and a similar representation was made in his appeal letter. A check mark on a form and a form letter, even from the treating chiropractor, might not be compelling evidence. A claim administrator does not "owe the opinions of [a treating health care provider] any special deference." *Chalker v. Raytheon Col,* 291 F. App'x 138, 144 (10th Cir. 2008) (unpublished). The Plan suggests that these are the type of injuries that an NFL player might be expected to incur on the job during training camp. It adds that Dr. Vetanze has potential biases due to his being an advocate for his patients and his own financial interest in wanting to recover payment for his services. However, Dr. Vetanze's opinion should have been considered, and it is not at all clear that it was. *Cf. Bray v. Sun Life and Health Ins. Co.,* 838 F.Supp.2d 1183, 1195 (D. Colo. 2012) (an administrator may not ignore a treating physician's opinion and must have a sufficient evidentiary basis to reject it).

There appears to have been a degree of neglect or stubbornness on both sides. CIGNA either did not consider or, at the least, did not document that it considered, Dr. Vetanze's opinion. It certainly did not provide any explanation as to why it decided not to credit that opinion. On the other hand, Dr. Vetanze provided essentially no explanation as to why the treatment of a miscellany of injuries to NFL players during a training camp would not be, as they intuitively would seem to be, work-related. Dr. Vetanze had the opportunity to provide additional information on three occasions, but he took none of these opportunities to provide further support.[4]

**Order**

Accordingly, the Court reverses the denial of benefits, because on the present record, the denial must be regarded as an abuse of discretion. The Court directs that the administrative record be reopened for the presentation by either or both parties of such additional evidence as they deem appropriate. The Court expresses no opinion on what ultimate decision should be made. The Court holds only that CIGNA must apply the rebuttable presumption to each separate claim in light of the full record including any supplemented and then explain its decision, including its consideration of Dr. Vetanze's opinion.

DATED this 3rd day of December, 2013.

BY THE COURT:

*[signature: Brooke Jackson]*

_____

R. Brooke Jackson
United States District Judge

---

[4] Dr. Vetanze did execute an affidavit on March 30, 2011 [#53-4] which was apparently supplied to CIGNA by counsel on April 27, 2011. *See* Opening Brief [#53] at 3. However, the affidavit adds no further information or explanation as to why the treatments in question were not for work-related injuries or illnesses.